# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| GREE, INC., | § | |
| *Plaintiff*, | § | |
| v. | § | Case No. 2:19-cv-00071-JRG-RSP |
| SUPERCELL OY, | § | |
| *Defendant*. | § | |

## MEMORANDUM ORDER

Defendant Supercell Oy filed this motion to transfer this action and two others (collectively, "Texas Actions") from this District to the Northern District of California, or alternatively, to dismiss or stay the Texas Actions. (Dkt. No. 26).[1]

Supercell argues that the Texas Actions should be transferred to the N.D.Cal. for two reasons. First, Supercell argues that Plaintiff GREE, Inc. breached a Confidential Settlement Agreement (Dkt. No. 26-4) between the parties with the proper remedy being transfer. Second, Supercell argues that an analysis under 28 U.S.C. § 1404(a) dictates transfer.

Supercell has already presented many of these same arguments to the Court in the N.D.Cal., prompting that Court to note that "principles of comity among federal courts and judicial efficiency weigh heavily in favor of resolving all of the parties' disputes in Texas." *Supercell OY v. GREE, Inc.*, No. 3:19-CV-01106, Dkt. 32 (N.D. Cal. May 31, 2019). This Court agrees with that conclusion.

---

[1] Upon receiving the Motion, GREE filed a response (Dkt. No. 64), to which Supercell filed a reply (Dkt. No. 69) and GREE filed a sur-reply. (Dkt. No. 71).

## I. BACKGROUND

### a. Parties

Supercell is a mobile game development company founded in 2010 and headquartered in Finland. (Dkt. No. 26, at 5-6). Supercell releases mobile games and distributes its games internationally and throughout the United States, including Texas. (*Id.*, at 6).

GREE is a social media company that provides mobile content and services, including games, entertainment, media, advertising, and investment services. It was founded in 2004 and is based in Japan. (Dkt. No. 1, at 3).

### b. Prior Actions

In 2017, GREE and Supercell commenced patent infringement litigations and patent office proceedings in Japan, China, and the United States against each other.[2] In Japan, GREE filed actions against Supercell and Supercell filed actions against GREE. In China, Supercell filed actions against GREE and GREE filed invalidity contentions against Supercell. In the United States, Supercell filed an action against GREE in the the N.D.Cal., entitled *Supercell Oy v. GREE Inc., GREE International Entertainment, Inc., and Funzio Games, Inc.*, Case No. 3:17-cv-5556. In addition, Supercell filed Post-Grant Reviews against some of GREE's patents, which are currently on appeal before the Federal Circuit. (Dkt. No. 26-4, at 2).

### c. Agreement

On February 7, 2019, the parties entered a Settlement Agreement in order to resolve the Japanese actions, dismiss the Chinese actions and U.S. action, and effect a standstill agreement with respect to those actions and any further litigation or claims between the parties. A resolution of the Post-Grant Reviews was not provided for in the Agreement. (*Id.*).

---

[2] Some subsidiaries of Supercell and GREE were also parties to some of the actions, but this does not change the analysis of the motion.

The Settlement Agreement included a licensing clause, but only as to GREE's Japanese patents and applications, expressly excluding "all non-Japanese patents and patent applications" including the patents at issue in the Texas Actions. (*Id*., at 3).

The Settlement Agreement also had a standstill provision, which provided in part that the parties would not "commence . . . any patent litigation action or proceeding . . . against the other Party . . . until February 28, 2019" ("Standstill Period"). (*Id*., at 10). Within the same standstill clause, each party agreed to "[d]uring the Standstill Period . . . notify the other [Party] promptly in writing of any patent infringement claims . . . of which it becomes aware." (*Id*., at 10-11).

> "6.1 Each Party . . . irrevocably covenants that it . . . will not commence, maintain, or prosecute any patent litigation action or proceeding, including, but not limited to, any action alleging infringement by or seeking a declaratory judgment of invalidity, non-infringement or unenforceability, against the other . . . anywhere in the world from the Effective Date until February 28, 2019 . . . During the Standstill Period, each Party agrees to notify the other promptly in writing of any patent infringement claims . . . of which it becomes aware."

(*Id*.).

The parties included a choice of law clause in the Settlement Agreement, agreeing that the "Agreement and all related documents, and all matters arising out of or relating to this Agreement" are governed by California law. Furthermore, the parties agreed that "sole jurisdiction and venue for any action for breach of or to enforce this agreement shall be" the N.D.Cal.. (*Id*., at 13).

> 8.5 Governing Law; Submission to Jurisdiction. This Agreement and all related documents, and all matters arising out of or relating to this Agreement, are governed by, and construed in accordance with, the laws of the State of California, United States of America (including California choice of law statutes), without regard to the conflict of laws provisions thereof to the extent such principles or rules would require or permit the application of the laws of any jurisdiction other than those of the State of California . . . The sole jurisdiction and venue for any action for breach of or to enforce this Agreement shall be the United States District Court for the Northern District of California. All Parties consent to the jurisdiction of such courts for any such action and agree that process may be served in the manner allowed by the laws of the State of California or United States federal law.

(*Id*.).

The final relevant passage of the Settlement Agreement dealt with applicable relief if either party breached the agreement. It provided that the non-breaching party can seek equitable relief if the breaching party causes irreparable harm. (*Id.*, at 13).

> "8.6 Equitable Relief. Each party acknowledges that a breach by the other party of this Agreement may cause the non-breaching party irreparable harm, for which an award of damages would not be adequate compensation and, in the event of such a breach or threatened breach, the non-breaching party shall be entitled to seek equitable relief, including in the form of a restraining order, orders for preliminary or permanent injunction, specific performance, and any other relief that may be available from any court . . . These remedies shall not be deemed to be exclusive but shall be in addition to all other remedies available under this Agreement at law or inequity, subject to any express exclusions or limitations in this Agreement to the contrary."

(*Id.*).

### d. Current Litigation

After the standstill period ended on February 28, 2019, GREE commenced the three Texas Actions against Supercell in the Eastern District of Texas alleging only patent infringement claims.[3] Later that day, Supercell sued GREE in the N.D.Cal., alleging, as amended, breach of contract claims and declaratory judgment claims related to all patents asserted in the Texas Actions as well as two additional patents. (Dkt. No. 26, at 4).

Supercell then moved for a temporary restraining order in the the N.D.Cal. action, seeking to prevent GREE from pursuing the Texas Actions. The California court denied the motion and stayed the action, pending resolution of this Motion. (Dkt. No. 64, at 1 n.1).

---

[3] Three Texas Actions exist: Case No. 2:19-cv-00070 ("70 Action"), which involves U.S. Patent Nos. 9,604,137, 9,956,481, 9,795,873, and 9,774,655; this Action, Case No. 2:19-cv-00071 ("71 Action"), which involves U.S. Patent No. 9,597,594; and Case No. 2:19-cv-00072 ("72 Action"), which involves U.S. Patent Nos. 9,636,583 and 9,770,659, and is currently stayed pending the appeal of post-grant reviews involving some of the same patents. (Dkt. No. 26, at 4).

## II. STATEMENT OF LAW

"The general rule favors the forum of the first-filed action, whether or not it is a declaratory action." *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1384 (Fed. Cir. 2010) (citing *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993) (citations omitted)). 28 U.S.C. § 1404(a) further provides that:

> **(a)** For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

Thus, a district court, despite the first-to-file rule, may transfer the case under § 1404(a) if, after evaluating the convenience of the parties and various private and public interest factors, it finds a transfer would serve "the convenience of parties and witnesses" and otherwise promote "the interest of justice." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) (quoting § 1404(a)). The first step in a Court's transfer analysis is deciding "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). That step is not disputed here.

If that threshold is met and the Parties have a valid forum-selection clause, then the clause is "given controlling weight in all but the most exceptional cases." *Atl. Marine Const.*, 571 U.S. at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring). Otherwise, the movant must show that the transferee venue is clearly more convenient than the venue chosen by the plaintiff. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). This standard can be met through the private and public interest factors. *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

The private interest factors include: (1) the relative ease of access to sources of proof; (2) availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance

5

for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the familiarity of the forum with the law that will govern the action; and (4) the avoidance of unnecessary problems in conflict of laws. *Id*.

### III.  DISCUSSION

Supercell argues that the Texas Actions should be transferred to the N.D.Cal. First, Supercell argues that the California action is "the first—and in fact, only—*properly* filed action." (Dkt. No. 26, at 1). Supercell argues that GREE breached the Settlement Agreement twice—by filing the Texas Actions before the end of the standstill period and by not notifying Supercell of patent infringement claims as required under the Settlement Agreement. Accordingly, Supercell contends that these breaches make the Texas Actions improper such that transfer is appropriate. (*Id*.).

Second, Supercell argues that the analysis under 28 U.S.C. § 1404(a) dictates transfer. Supercell argues that forum selection clauses should be given controlling weight in deciding a motion to transfer under § 1404(a) and that the Settlement Agreement contains an applicable forum selection clause. Supercell also argues that even without the forum selection clause, the private interest factors analyzed under § 1404(a) compel transfer to the N.D.Cal. as "it is by far the most convenient forum." (*Id*., at 1-2).

#### a.  Supercell argues GREE breached the Agreement

First, Supercell argues that GREE violated the Settlement Agreement and that, pursuant to the Settlement Agreement, the proper relief for breach is specific performance. Thus, the Texas Actions should be transferred, or alternatively, dismissed or stayed. (Dkt. No. 26, at 7-8).

### i. Supercell argues GREE filed Texas Actions too early

Supercell makes two arguments that GREE filed the Texas Actions before the expiration of the standstill period on February 28, 2019. Supercell argues first that GREE filed the Texas Actions on February 27, 2019 because all California contracts must use Pacific Time, even if no time zone is given in the contract; and secondly that the Settlement Agreement implies that a party "commences" an action when it logs into the court's docket system, not when it files its complaint. (*Id.*)

Supercell points to the Notice of Electronic Filing, which states that GREE "filed" the Texas Actions on February 27, 2019 and "entered" the complaint on February 28, 2019. However, this Court's Local Rules state that:

> (B) When a document has been filed electronically, the official record is the electronic recording of the document as stored by the court, and the filing party is bound by the document as filed. A document filed electronically is deemed filed at the "entered on" date and time stated on the Notice of Electronic Filing from the court.
>
> (C) Service is deemed completed at the "entered on" date and time stated on the Notice of Electronic Filing from the court, except that documents filed electronically after 5:00 p.m. Central Time shall be deemed served on the following day.

Local Rule CV-5(a)(3)(B-C). Thus, under this Court's Local Rules, the time of entering determines when the action is commenced, in this case on February 28, 2019.

Second, Supercell argues that California law should supersede this Court's Local Rules due to the Settlement Agreement's choice of law provision. The agreement's relevant portion states:

> 8.5 Governing Law; Submission to Jurisdiction. This Agreement and all related documents, and all matters arising out of or relating to this Agreement, are governed by, and construed in accordance with, the laws of the State of California.

(Dkt. No. 26-4, at 13).

Supercell cites to California Government Code § 6808 and *Miracle Auto Center v. Superior Court*, 68 Cal. App. 4th 818, 821-22 (Cal. Ct. App. 1998), as holding that Pacific Time should be used when interpreting a contract under California law. Under this theory, GREE would have filed its case at 10:00 P.M. on February 27, 2019, which would be a violation of the Agreement. (Dkt. No. 26, at 7-8).

The *Miracle Auto Center* case merely held that "standard time," as used in the California statutes, means "the time then in effect" without regard to whether it is daylight savings time or standard time. *Id*. at 822. More to the point, "the Fifth Circuit has used absolute time to determine first-to-file status without regard to time zone differences." *Adam Corp./Grp. v. Fed. Deposit Ins. Corp.*, 2008 WL 11425403, at *3 (N.D. Tex. Mar. 24, 2008).[4] The Court finds that Supercell has not shown that California law requires the use of Pacific Time in interpreting this contract. Further, the Court finds that a time zone was not provided for in the agreement, and therefore the absolute time of the filings governs.

Supercell argues that "commence" in the Settlement Agreement's standstill clause refers to the time when a party logs into the court's docket system, as this is when the party "commenced" the litigation. (Dkt. No. 26, at 8 n.3). However, the Local Rules hold that the time of entering governs. Further, the Court finds that it would be illogical to hold that an action is commenced before any document is uploaded into the Court's filing system, based solely on when a party had logged into the Court's computers.

Therefore, the time of filing and commencement of these actions is when the Complaint was submitted into the filing system in the court's time zone: 12:00 a.m. on February 28, 2019, which is after the standstill period.

---

[4] This case listed multiple opinions holding that the 5th Circuit uses absolute time to determine first-to-file status, such as *Formaldehyde Institute, Inc. v. U.S. Consumer Product Safety Comm.*, 681 F.2d 255, 262 (5th Cir. 1982).

8

### ii. Supercell argues GREE failed to properly notify Supercell

Supercell also argues that GREE breached the Settlement Agreement by not notifying Supercell of all the patent infringement claims it planned to bring. GREE brought multiple claims relating to seven different patents in the three Texas Actions, but only notified Supercell of the '873 patent infringement claim during the standstill period. (*Id.*, at 4). Supercell argues that this constituted a failure to notify as required under the agreement.

GREE counters that it was only required to notify Supercell of claims that it became aware of during the standstill period, not every claim it planned to bring.

The relevant portion of the Settlement Agreement states:

> 6.1 . . . During the Standstill Period, each Party agrees to notify the other promptly in writing of any patent infringement claims . . . of which it becomes aware."

(Dkt. 26-4, at 10-11).

In accordance with the plain meaning of the clause, this Court finds that the Settlement Agreement only requires notification of claims that either party became aware of during the standstill period. Since Supercell did not prove that GREE failed to meet this requirement, the Court does not find that GREE breached the Agreement. It is therefore not necessary for the Court to reach the question whether such a breach would cause the Texas Actions not to be deemed the first filed.

### b. Transfer under § 1404(a)

Supercell argues that the Court should transfer the Texas Actions under 28 U.S.C. § 1404(a). (Dkt. No. 28, at 8-9). First, Supercell argues that the Settlement Agreement's forum selection clause should control. Second, Supercell argues that both the private and public interest factors weigh in favor of transfer.

9

The first step in a Court's transfer analysis is deciding whether "the claim could have been filed" in the transferee forum. *Volkswagen* I, 371 at 203. The parties do not dispute that the Texas Actions could have been brought in the N.D.Cal. (*See* Dkt. No. 26, at 10). Thus, this step is met.

### i. Forum Selection Clause

Supercell argues that the forum selection clause in the Settlement Agreement should control. The relevant portion of the agreement states:

> The sole jurisdiction and venue for any action for breach of or to enforce this Agreement shall be the United States District Court for the Northern District of California.

(Dkt. No. 26-4, at 13).

GREE argues that the forum selection clause is inapplicable to the Texas Actions since the Texas Actions assert solely patent infringement claims and are not an "action for breach of or to enforce this Agreement." Supercell counters that GREE's allegations directly implicate the Settlement Agreement, and Supercell's claims in the California Action are inextricably tied, as a defense, to GREE's asserted claims in the Texas Actions. (Dkt. No. 26, at 1-2).

Yet, Supercell does not assert a breach of contract defense in its Answer. (*See* Dkt. No. 18). Even if Supercell did, motions to transfer venue "are to be decided based on 'the situation which existed when suit was instituted.'" *Game & Tech. Co. v. Blizzard Entm't, Inc.*, 2016 WL 4161678, at *2 (E.D. Tex. Aug. 5, 2016) (citing *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *In re EMC Corp.*, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 443 (1960))). Further, Supercell has not shown that GREE's allegations directly implicate the Settlement Agreement. The forum selection clause is quite narrow and applies only to actions for breach or enforcement of the Settlement Agreement, not all disputes between the parties or even all disputes relating to the Settlement Agreement. Taking all this into

consideration, the Court finds that the Settlement Agreement's forum selection clause is inapplicable.

Since there is no applicable forum selection clause, Supercell must show that the N.D.Cal., the transferee venue, is clearly more convenient than this district, the venue chosen by the plaintiff. *See Volkswagen II*, 545 F.3d at 315. Supercell devotes only a few paragraphs to the analysis of the convenience factors under §1404 and does not come close to carrying its burden.

### ii. Private Factors

To begin, the convenience of foreign corporations is generally given little weight in the venue analysis because travel to any U.S. venue would impose a similar degree of inconvenience. *Game & Tech. Co.*, 2016 WL 4161678, at *2 (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). Here, both Parties are foreign corporations.

The first private factor is the relative ease of access to sources of proof. Supercell argues its only U.S.-based office and the person most knowledgeable about its U.S. revenue are both in California. It also argues that relevant documents are in California, which favors transfer, or Finland, which is not significantly closer to either forum, but not in Texas. (Dkt. No. 26, at 14).

GREE has shown that the California office referred to by Supercell actually belongs to a subsidiary, which is not named as a party here or even in the California action, demonstrating that its presence is not needed to resolve this dispute. GREE also makes the point that the subsidiary's employee is not needed since any sales figures would be presented by a damages expert, not a fact witness. It appears that Supercell's own employees with relevant knowledge are in Finland and that the relevant documents are either stored in Finland or cloud-based, meaning that both forums have the same relative ease of access. Finally, GREE shows that it has not had an office in N.D.Cal. since long before this action was filed. Because both parties are foreign corporations and neither has an office or employees in either district, this factor is neutral.

The second factor is the availability of compulsory process to secure the attendance of witnesses. Supercell identifies only two other witnesses allegedly based in California, who each provided a declaration for GREE in the PTAB proceedings. GREE has shown that one of those (David Crane) was merely an expert and will not be used in the Texas Actions. The other (Jeff Rollins) lives in Cyprus, not California. This factor is neutral as neither forum has been shown to have subpoena power over relevant witnesses.

The third factor is the cost of attendance for willing witnesses. Supercell relies upon only the three witnesses discussed above along with other potential unidentified witnesses in Japan. The Court has already determined that those three witnesses do not support Supercell's arguments, and any witnesses from Japan, like those from Finland, will not be substantially more inconvenienced by attending trial in either district.

The fourth factor is all other practical problems that make trial of a case easy, expeditious and inexpensive. Supercell argues that transferring these actions to California will allow one court to adjudicate all disputes, but this argument has already been repudiated by the California Court itself. Accordingly, this factor is neutral.

### iii. Public Factors

The first public interest factor is the administrative difficulties flowing from court congestion. Supercell argues this factor is neutral. However, GREE shows that the Texas Actions are set for trial in August 2020, while the California action will not be set until June 2021, almost a year later. This due both to this district having a faster time to trial as well as the California action being stayed for some time.[5] This factor weighs against transfer.

The second public factor is the interest in having localized disputes decided at home. Supercell argues that the only U.S.-based offices of the companies are in California while neither

---

[5] Dkt. No. 64, at 12 n.6 (Time to trial in this district was 18.3 months versus 28.4 months in the N.D.Cal.).

party is incorporated in nor has any office in this district. GREE responds that in actuality, neither party has an office in California and neither party is at home in America. It further argues that citizens from both districts play the allegedly-infringing games, meaning both forums have an interest in protecting their citizens against the allegedly-infringing products sold in their district. This factor is neutral.

The third public interest factor is the familiarity of the forum with the law that will govern the case. Supercell argues that the Settlement Agreement was negotiated in California by attorneys based in California. Further, the agreement requires "all matters arising out of or relating to" the agreement to be governed by California law. As described above, the Settlement Agreement is inapplicable in this case. Further, this is patent infringement case that will involve federal patent law so both districts are equally capable of applying the law. This factor is neutral.

The fourth public interest factor is the avoidance of unnecessary problems of conflict of laws. Supercell argues that litigating in California will avoid unnecessary application of foreign law. GREE argues that the same body of federal patent law will govern the patent claims irrespective of the forum. Since only patent infringement claims are raised in the Texas Actions, the same body of federal law will be used. This factor is neutral.

GREE properly filed the Texas Actions first in this district. Thus, its forum is generally favored. For the case to be transferred under § 1404(a), Supercell needed to show that the transferee district is clearly more convenient than this district. It has not done so.

## IV. CONCLUSION

For the reasons herein, the Court **DENIES** Supercell's motion to transfer, or alternatively, to dismiss or stay the Texas Actions.

**SIGNED this 30th day of October, 2019.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE