**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| GREE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Case No. 2:19-cv-00070-JRG-RSP |
| v. | § | Case No. 2:19-cv-00071-JRG-RSP |
| | § | |
| SUPERCELL OY, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM ORDER**

Before the Court are motions in both cases entitled Motion to Strike the Portion of the Report of GREE, Inc.'s Damages Expert Regarding Conversations Concerning Undisclosed Information About GREE's Views of the Parties' Prior License ("Motions"), filed by Defendant Supercell Oy ("Supercell"). **Dkt. No. 204** in Case No. 2:19-cv-00070-JRG-RSP ("the -70 case") and **Dkt. No. 185** in Case No. 2:19-cv-00071-JRG-RSP ("the -71 case"). After consideration, the Court **DENIES** both Motions.

**I.    BACKGROUND**

Plaintiff GREE, Inc. ("GREE") and Supercell have been engaged in various legal proceedings around the world, including Japan where GREE is based. On February 7, 2019, the Japanese litigation ended when GREE and Supercell entered into a Confidential Settlement Agreement ("CSA"), in which GREE, among other things, granted a license to Supercell for the use of its entire portfolio of 1,079 Japanese patents and applications.[1] *See* Dkt. No. 204-2 at ¶ 93.

Soon after, GREE filed the two present lawsuits against Supercell in this District. In its Second Amended Initial and Additional Disclosures, GREE relevantly identified two witnesses. It

---

[1] Unless indicated otherwise, all citations are to the -70 case. However, they apply equally to the corresponding filings or orders entered in the -71 case.

identified Eiji Araki as someone "knowledgeable about GREE's business practices and licensing." Dkt. No. 204-4 at 6. GREE identified Masaki Fujimoto as someone "knowledgeable about GREE's technology, processes for game development, and patenting practices." *Id*. Mr. Araki and Mr. Fujimoto were also designated as Rule 30(b)(6) witnesses.

On February 4 and 5, 2020, Supercell deposed Mr. Araki, who answered, among other things, questions relating to GREE's policies for licensing intellectual property. *See* Dkt. Nos. 235-4 at 31:9–38:15; 235-5 at 238:5–242:2 However, Mr. Araki did not answer why GREE decided to enter into the CSA with Supercell, testifying that he had no personal knowledge and the only information he had relating to that topic was protected by attorney-client privilege. *See* Dkt. No. 204-6 at 22:14-23:8. On February 5 and 6, 2020, Supercell deposed Mr. Fujimoto. Supercell apparently did not ask Mr. Fujimoto about GREE's inventor compensation or the CSA.

On May 4, 2020, GREE served the Expert Report of Stephen L. Becker, Ph.D, its damages expert. Dr. Becker addressed the CSA covering GREE's portfolio of 1,079 Japanese patents and patent applications, finding that the $4.5 million CSA payment was attributable to fifteen Japanese patents which remained in litigation at the time of the settlement. Dkt. No. 204-2 at ¶ 95. Two of those patents include foreign counterparts to patents asserted the -70 case and the -71 case respectively.[2] For this opinion, Dr. Becker partially relied on conversations with Mr. Fujimoto. However, as Supercell concedes, he also relied on other pieces of evidence for his conclusion. *Id*. at ¶¶ 94–95; *see also* Dkt. No. 204 at 5 ("Dr. Becker [can offer] his opinion regarding the importance of the fifteen patents because he identifies other evidence to support this in his report – including the timing of the settlement and incentive payments made to the inventors of those fifteen patents.").

---

[2] U.S. Patent Nos. 9,774,655 and 9,597,594 are asserted in the -70 case and the -71 case respectively.

For instance, Dr. Becker described that "[u]nder Japanese law, inventors working for GREE may be entitled to incentive payments for the filing of a patent application, the granting of a patent, and potentially the subsequent licensing of a patent." Dkt. No. 204-2 at ¶ 95 n.232. He therefore attributed the entire settlement payment to the 15 asserted patents because "GREE made incentive payments to only the inventors of the 15 asserted patents as of the date of the Settlement Agreement." *Id.* at ¶ 95.

Nonetheless, Supercell takes issue with Dr. Becker's reliance on Mr. Fujimoto, arguing that GREE did not disclose that Mr. Fujimoto had knowledge GREE's licensing practices and viewpoints. Therefore, it seeks to strike from Dr. Becker's report and trial testimony any reference to or opinions based on conversations between him and Mr. Fujimoto regarding undisclosed information about GREE's views of the parties' prior patent license.

In an attempt to resolve this issue, GREE agreed to withdraw and not rely upon the first sentence of paragraph 95 of Dr. Becker's report:

> I understand from Mr. Fujimoto, who is a member of the Board of Directors, General Manager of Development, and the Chief Technology Officer at GREE, that the parties negotiated the lump-sum $4.5 million settlement payment based primarily on consideration of the remaining 15 asserted patents in Japan.

*Id.* (citing "Discussion with Mr. Fujimoto"). Despite this offer, Supercell argues that Dr. Becker's reliance goes beyond this one sentence and that accordingly, its motion is still live.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 26 and this Court's Discovery Order, a party shall provide "the name . . . of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses . . . ." FED. R. CIV. P. 26(a)(1)(A)(i); *see also* Dkt. No. 44 at ¶ 1(d). "If a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that

information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). The Fifth Circuit applies a four factor test to determine whether exclusion of expert testimony based on undisclosed information is an appropriate remedy: (1) the explanation, if any, for the party's failure to provide discovery; (2) the prejudice to the opposing party of allowing the expert to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the expert evidence. *See Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996). The movant carries the burden on this issue. *Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, No. 2:16-CV-00134-JRG, 2017 WL 2844646, at *1 (E.D. Tex. May 19, 2017) (denying a motion to strike portions of an expert's report based on undisclosed conversations because the movant had not met its burden).

### III. ANALYSIS

Supercell contends that GREE's failure to disclose Mr. Fujimoto's knowledge on this topic and Mr. Araki's refusal to testify regarding GREE's views on the ground of privilege violate at least two discovery rules. First, it argues that GREE's failure to include Mr. Fujimoto's knowledge of GREE's licensing views in its "summary of the substance of the information known" by him was a violation. Second, it argues that GREE's 30(b)(6) witness, Mr. Araki, improperly refused to provide GREE's view of the license on grounds of privilege.

GREE first responds that its withdrawal of the first sentence of paragraph 95 of Dr. Becker's report should have mooted this issue since no allegedly undisclosed material remains in Dr. Becker's report. Further, it argues that Dr. Becker relies on other sources of information other than Mr. Fujimoto. It also contends that it disclosed Mr. Fujimoto as a fact witness in its Initial and Additional Disclosures with a description that Supercell is interpreting as more limiting than intended. GREE argues it identified Mr. Fujimoto as knowledgeable about GREE's patenting

practices, which pertained directly to Mr. Fujimoto's discussions with Dr. Becker about inventor compensation and its resulting influence on the price of the CSA. Thus, GREE contends that Supercell should not be surprised by Mr. Fujimoto's opinions. Finally, it argues that Supercell takes a single objection during Mr. Araki's deposition out of context and, regardless, it was a proper objection since it sought testimony regarding why GREE entered the CSA. Yet, it argues Supercell never asked about how GREE internally valued the CSA payment or anything relating to GREE's inventor payments.

The Court agrees with GREE that the summary in its Initial and Amended Disclosures should not be read so narrowly. Instead, the summaries are meant to give broad notice as to what the witness will testify about. They should indicate briefly the general topics the witnesses plan to discuss without being as burdensome or restrictive as Supercell requests. This is the tradeoff for having these mandatory disclosures early in the case. GREE provided a description for Mr. Fujimoto—one that provided Supercell enough information that it should not be surprised by Dr. Becker's later reliance on him. Therefore, no violation occurred.

Beyond that, GREE indicated that Mr. Fujimoto knew about GREE's patenting practices, which would include GREE's inventor incentives. Therefore, even under Supercell's restrictive understanding of the disclosure, the conversation between Mr. Fujimoto and Dr. Becker would be appropriate. In a similar vein, he could have been asked about this topic at his deposition.

Furthermore, even if it was improper for Dr. Becker to rely on Mr. Fujimoto for his opinions regarding the CSA and the influence the fifteen asserted patents had on it, the opinion would still be admissible. As Supercell admitted, Dr. Becker identifies other evidence to support his conclusion, such as the timing of the settlement and incentive payments made to the inventors of the fifteen asserted patents. *See* Dkt. No. 204 at 5.

Finally, Supercell has not persuasively shown that Mr. Araki's objection, or general deposition conduct, was a violation of either Rule 26 or this Court's Discovery Order.

In sum, Supercell has not met its burden of showing that GREE failed to provide information or identify a witness as required by Rule 26(a). Therefore, sanctions pursuant to Rule 37 are inappropriate.

### IV.   CONCLUSION

After consideration, the Court **DENIES** Supercell's Motions. Dkt. No. 204 in the -70 case and Dkt. No. 185 in the -71 case.

**SIGNED this 20th day of July, 2020.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE